FILED
99 MAR 31 PH 3:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAR 31 1999

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

ANGUS LAMAR OLIVER, )
)
Plaintiff, )
)
vs )  Case No. CV96-TMP-1694-NE
)
CATHY MULLINS, DR. GEORGE )
LYRENE, CORRECTIONAL MEDICAL )
SYSTEMS, INC., and )
JENNIFER COOK, )
)
Defendants )

OPINION GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This cause is before the court on the motions for summary filed by the defendants on September 25, 1996,[1] and May 29, 1998. Plaintiff asserts claims for deliberate denial of medical care in violation of the Eighth Amendment and for medial malpractice under Alabama Medical Liability Act ("AMLA"). Named as defendants are

---

[1] The undersigned magistrate judge filed a report and recommendation on February 10, 1997, recommending that the initial motion for summary judgment be granted on plaintiff's Eighth Amendment claim for denial of medical care. Before the district judge could take action on the recommended dismissal, plaintiff was given leave to file an amended complaint, which he did on May 22, 1997. Thus, the initial motion was never acted upon. The parties have now consented to have the undersigned exercise final dispositive jurisdiction pursuant to 28 U.S.C. § 636(c). See Doc. No. 54 filed January 20, 1998.

1

Correctional Medical Services, Inc., ("CMS"), a private contractor under contract to provide medical services to Alabama prison inmates; Dr. George Lyrene, a CMS physician and State Medical Director; and two nurses employed by CMS at the Limestone Correctional Facility, Cathy Mullins and Jennifer Cook.

Viewing the evidence most favorably to the plaintiff, as the court is required to do on the defendants' motions for summary judgment, it appears plaintiff has had chronic problems with infection of his right eye socket following surgery in 1986 to remove the cancerous eyeball. Since then and throughout the time he has been incarcerated, his condition has been monitored and treated by medical personnel at a number of Alabama prisons as well as the Alabama Eye Foundation. In October 1995, plaintiff was transferred to the Limestone Correctional Facility, where he was examined by a staff physician (not a defendant in this action), who ordered that he clean his eye socket with hydrogen peroxide 2 to 3 times daily and medicate it with Neosporin antibiotic ointment. Treatment of the socket achieve mixed results at best with it often becoming infected, purulent, and even bloody. It was frequently painful.

Slightly more than a month after arriving at Limestone, another staff physician recommended that plaintiff be seen by a

free-world doctor, which was approved by Dr. Lyrene in his capacity as CMS's Medical Director. In December 1995, plaintiff was seen by Dr. Callahan at the Eye Foundation Hospital in Birmingham. Dr. Callahan recommended that he continue to clean his eye several times daily with hydrogen peroxide and to apply Neosporin ointment.

On an irregular basis, plaintiff was given supplies to clean and medicate his eye over the next several months. On occasion, nurses Mullins and Cook failed to provide him with supplies, or substituted Triple Antibiotic Ointment ("TAO") for Neosporin. Moreover, although he was required to clean his eye several times per day and then cover it with a sterile gauze, the nurses gave him only one sterile gauze each day to do so. Because he had to use the same pad over and over to clean and cover his eye socket, the gauze pads frequently became soiled and smelly, preventing plaintiff from being able to clean and cover the eye as ordered by the doctors. Although he complained twice in formal inmate grievances about the lack of cleaning supplies, nothing was done to correct the situation.

Plaintiff's eye socket continued to deteriorate from infection. By May 1996, the flesh around the socket had been so damaged by infection that a small area of bone became exposed. He

was again seen by CMS staff physicians in May and June, both of whom ordered the continued treatment of the infection with cleaning and Neosporin Ointment. In August 1996, he complained to a nurse who is not a party to this action that the TAO ointment burned and blistered his eye, and that the doctors had ordered Neosporin. A telephone check with the CMS pharmacist confirmed that TAO and Neosporin were interchangeable.

In January 1997, plaintiff was examined by Dr. Jeffery Seitzinger, a free-world eye specialist, who recommended that plaintiff have surgery to correct the exposure of the bone and attempt to limit the infection. Surgery was performed on March 25 and 26, 1997, to create a "flap" of skin over the eye socket and exposed bone. Dr. Seitzinger has expressed the medical opinion that the delay in performing surgery did not contribute either to the need for surgery or make it any more radical than it otherwise would have been.

### Eighth Amendment Denial of Medical Care

Plaintiff's first claim against defendants is the assertion that they violated his right under the Eighth Amendment to be free from cruel and unusual punishment by deliberately failing to provide him with necessary medical treatment for the infection of

his eye socket. He contends that nurses Cook and Mullins failed to provide him with the supplies necessary to clean and cover his eye, causing the infection to grow steadily worse. He does not clearly identify a basis on which Dr. Lyrene and CMS may be liable under the Eighth Amendment.

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel and unusual punishment in violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97 (1976). "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991), quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied,* 434

U.S. 864 (1977). Mere negligence is insufficient to support a constitutional claim. *Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). As stated by the *Estelle* Court, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106. Therefore, an accidental or inadvertent failure to provide medical care or negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981). Neither will a mere difference of opinion between an inmate and the institution's medical staff, as to treatment and diagnosis, alone give rise to a cause of action under the Eighth Amendment. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. at 106-08. Likewise, the disagreement between two doctors, as to the course of treatment, also does not state a violation of the Eighth Amendment, since there may be several acceptable ways to treat a medical condition. *White v. Napoleon*, 897 F.2d 103, 110 (3rd Cir. 1990).

In *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986), the Eleventh Circuit held that an inmate's dissatisfaction

with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. *Barfield v. Brierton*, 883 F.2d 923, 938 (11th Cir. 1989). Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." *Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). Clearly, "not every illness or injury invokes the constitutional protection -- only those that are 'serious' have that effect." *Evans v. San Quentin State Prison*, 1991 WL 438695, at 1 (N.D. Cal. Apr. 1, 1991), quoting *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1081 (3rd Cir. 1976). In *Estelle*, the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical torture or a lingering death," to "less serious cases," resulting from the "denial of medical care,"

7

which could cause "pain and suffering." *Estelle*, 429 U.S. 1187 at 103, 97 S.Ct. at 290. Because "society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian* 112 S.Ct. 995, 1000 (1992); *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176 (11th Cir 1994). A "serious" medical need has been defined as "one that has either been diagnosed by a physician as requiring medical treatment, 'or one that is so obvious that even a lay person would recognize the need for a doctor's attention.'" *Evans*, 1991 WL 43695, at 1, quoting *Laaman v. Helgemoe*, 437 F.Supp. 269, 311 (D.N.H. 1977). See also *Page v. Sharpe*, 487 F.2d 567, 569 (1st Cir. 1973). It is the necessity and not the desirability of medical treatment sought which is important to the determination of whether medical officials have exhibited deliberate indifference. *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981).

Insofar as plaintiff attempts to attach liability to CMS and Dr. Lyrene, additional principles are important. Liability under § 1983 cannot be predicated merely on the doctrine of *respondeat superior*. The employer/employee relationship alone is not enough

8

to make the employer liable for the constitutional torts of its employees. Rather, an official policy, practice, or custom of the employer must be the motivating force behind the constitutional violation. See *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct 2018, 56 L.Ed. 2d 611 (1978). Only if there exists a causal link between the claimed constitutional violation and a policy, practice, or custom of the employer can it be said that the employer committed the tort. The acquiescence of an employer to widespread abuses by its employees, which amounts to deliberated indifference on the part of the employer, however, can establish official acceptance of the abuses as policy or custom. Likewise, a supervisor is not liable for constitutional violations unless he is on notice of such widespread abuse by his subordinates that his failure to act amounts to deliberate indifference to the rights of others. *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11th Cir, 1985).

At this point it is clear that plaintiff is unable to show any basis for liability under § 1983 on the part of CMS or Dr. Lyrene. No evidence suggests any official policy to deny care, treatment, or medical supplies to prisoners. No evidence suggests widespread abuses of this nature that would indicate an acceptance of

inadequate medical care as a policy or practice of CMS. There is simply reason to believe that the failure of nurses Mullins and Cook to provide plaintiff with adequate eye-cleaning supplies was the product of an official policy or practice of CMS. Likewise, there is no reason to believe that Dr. Lyrene, in his capacity as Medical Director, knew of or sanctioned such shortcomings. In sum, both CMS and Dr. Lyrene are entitled to judgment as a matter of law with respect to plaintiff's Eighth Amendment claim under § 1983.

As to plaintiff's claim against nurses Mullins and Cook, the essential claim is that they knew that plaintiff was suffering from chronic infection of the eye socket *and* that various doctors had ordered that he clean the eye socket several times each day and keep it covered. Yet, knowing the need for treatment to control the infection, they gave him only one sterile gauze pad each day, which he had to use repeatedly to clean and cover his eye socket.[2] It is certainly clear to anyone, much less a medical professional, that the repeated use of a soiled pad completely undermines the cleaning of the infected eye socket, re-introducing the infection with each subsequent use. The purpose of the treatment ordered by

---

[2] The court recognizes that defendants dispute this factual assertion, but for purposes of summary judgment, the court must accept as true plaintiff's version of the facts.

the doctors was to *clean* the eye socket of the infection, which was utterly defeated by the limitation imposed by the nurses. These facts, if proven, would establish deliberate indifference by showing that the nurses knowingly interfered with the efficacy of the treatment ordered by the doctors. Thus, because there are disputes of fact on this point, nurses Mullins and Cook are not entitled to judgment as a matter of law, and their motions for summary judgment will be denied.

### State Medical Malpractice Claim

In addition to a constitutional claim under the Eighth Amendment and § 1983, plaintiff also asserts a claim against defendants under the Alabama Medical Liability Act ("AMLA"), <u>Alabama Code</u>, § 6-5-480 *et seq.* As already discussed above, plaintiff really points to no basis for concluding that Dr. Lyrene did anything actionable under federal or state law, and his motion for summary judgment will be granted on this claim as well. Unlike an action under § 1983, however, *respondeat superior* is an adequate basis for liability under Alabama law. Thus, insofar as CMS's employees, particularly Mullins and Cook, are guilty of

malpractice, it too is liable.

As already discussed, there are sufficient factual disputes to preclude summary judgment on the part of nurses Mullins and Cook on the plaintiff's federal § 1983 claim. Because the standard of proof is more difficult on the federal claim ("deliberate indifference" versus negligence), it follows that there are factual disputes that preclude summary judgment for Mullins and Cook on the AMLA claim as well. Under plaintiff's theory of the case, it is not necessary that he establish by *expert testimony* that the failure of the nurses to give plaintiff sufficient supplies to effectively clean his eye was a breach of the standard of care they owed to him. First, they were under orders from various doctors to supply plaintiff with necessary cleaning supplies, yet, according to him, they refused to do so despite his complaints to them. Second, it does not require an expert to prove that a reasonably competent nurse would not give a patient such as plaintiff only one sterile gauze per day knowing that he was required to use the pad to both cover and clean his eye several times with it. This is a case "where want of skill or lack of care is so apparent as to understood by a layman, and only common knowledge and experience are required to understand it...." *Walker v. Southeast Alabama*

*Medical Center*, 545 So. 2d 769, 771 (Ala. 1989). Mullins's and Cook's motions for summary judgment will be denied on this claim, as will CMS's.

### Conclusion

By separate order, the court will grant Dr. Lyrene's motion for summary judgment on all claims, and he will be dismissed with prejudice. The court will also grant CMS's motion for summary judgment in part, dismissing the § 1983 claim against it, but denying the motion as to the Alabama Medical Liability Act claim. Finally, the court will deny the motions for summary judgment filed in behalf of Mullins and Cook.

The case is currently set for a non-jury trial before the undersigned magistrate judge at 9:00 A.M., April 29, 1999, in Courtroom 2A, Hugo L. Black United States Courthouse, Birmingham, Alabama. The court will issue a writ of habeas corpus ad testificandum for plaintiff's attendance.

DATED this the _31st_ day of March, 1999.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE